STATE OF CONNECTICUT *v.* SHEILA ALDRICH
(AC 17701)

Foti, Spear and Dupont, Js.

Argued February 26—officially released June 8, 1999

*Robert E. Byron,* special public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Sheila Aldrich, appeals from the judgment of conviction, rendered after a jury trial, of promoting prostitution in the first degree in violation of General Statutes § 53a-86[1] and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1991) § 53-21.[2] On appeal, the defendant claims that she was denied a fair trial because the prosecution continually presented unsubstantiated testimony concerning the defendant's prior drug use. She also claims that the constitutional guarantee against double jeopardy was violated when she was separately sentenced for the offenses of promoting prostitution of a minor and risk of injury to a child. We affirm the judgment of the trial court.

---

[1] General Statutes § 53a-86 (a) provides: "A person is guilty of promoting prostitution in the first degree when he knowingly: (1) Advances prostitution by compelling a person by force or intimidation to engage in prostitution, or profits from coercive conduct by another; or (2) advances or profits from prostitution of a person less than sixteen years old."

[2] General Statutes (Rev. to 1991) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both." Section 53-21 was not amended during the period relevant to this case.

The jury reasonably could have found the following facts. Before her twelfth birthday, the defendant's daughter, M, lived with the defendant and the defendant's boyfriend in Meriden. In 1992 and 1993, when M was ten and eleven years of age, Richard Tomczuk, a friend of the defendant, would visit almost daily. Sometimes when M was with Tomczuk and the defendant in Tomczuk's car, she observed the defendant performing fellatio on Tomczuk in exchange for $20. M also saw Tomczuk touch the defendant's vaginal area and breasts on numerous occasions.

During this same time period, another man, Dominic Tortorella, came to the defendant's house frequently and had sexual relations with the defendant. When leaving, Tortorella would ask M for a kiss. The defendant would urge M to kiss Tortorella, saying that she needed the money and that she would beat M if she refused. Reluctantly, M would allow Tortorella to kiss her. Tortorella would put his tongue in M's mouth, causing M to want to vomit. Tortorella would then pay the defendant. This happened on numerous occasions.

During this same time period, the defendant would send M out to ask people for money to buy cigarettes. She would also tell M to "go out there and sell your body," saying it was "easy." Sometimes M would be awakened in the night and sent out. M did not want to go, but complied. While out, M would prostitute herself with men. M gave all the money she received straight to the defendant. If M failed to comply with the defendant's demands, the defendant would beat M, slapping and kicking her. This happened quite often. The defendant once blackened M's eye.

At the time of trial, M was fourteen years of age, diagnosed with multiple sclerosis and in a wheelchair. Additional facts are set forth as they become relevant in our analysis of the defendant's specific claims.

I

The defendant first claims that she was denied her right to a fair trial because the prosecution presented unsubstantiated testimony concerning her prior drug use. We disagree.

During the direct examination of M, when asked about the defendant's performing oral sex on Tomczuk, M stated that the defendant was paid afterwards. The state then asked M what the money was used for, and M replied, "for drugs." The defendant objected to the question as leading and asked that the answer be stricken. The trial court overruled the objection. The state then asked if M knew what kinds of drugs, and M replied, "heroin or cocaine." The trial court disallowed further questions on the subject.

Later, in response to questions about the defendant's sexual relations with men, M stated that such relations occurred while the defendant's boyfriend was in the apartment, and that he knew all the men. When the state asked if "they all [did] drugs together, too," M answered that they did. The defendant objected, and the trial court sustained the objection. The defendant did not move to strike the answer and the state did not pursue the subject.

Thereafter, during M's cross-examination, when M was asked about going out to perform acts of prostitution for money, defense counsel asked what would she do with the money. The following colloquy took place:

"A. Give it back to, give it to my mom.

"Q. You give it to your mom and she wants to buy some cigarettes?

"A. No, she wanted to buy drugs.

"Q. To buy drugs?

"A. Yes."

To all other questions asked of M that referenced the defendant's drug use, objections were sustained and no answers were given. In instances where M mentioned drugs in a nonresponsive manner to a question, the trial court struck the answers and cautioned the jury to "please disregard [them]." Although the state argued that drugs provided a motive for the defendant's behavior, the trial court sustained the defendant's objections and ordered stricken any testimony by other state's witnesses who mentioned the defendant's drug use, none of which were in direct response to a question by the state.

In response to a reference by another witness to the defendant's drug use, the trial court advised the jury to "disregard the response" and that it was "not part of this case." The state did not mention the defendant's drug use in its closing argument. During its charge to the jury, the trial court reminded the jurors that it had told them several times to disregard answers and that they should not consider stricken testimony. We presume that the trial court's instructions are followed. *State* v. *Reddick*, 224 Conn. 445, 454, 619 A.2d 453 (1993).

The defendant argues, however, that the questions asked by the state, which were not answered, as well as the answers given by the various witnesses that were stricken, show the state's attempt to inject extraneous and highly prejudicial matters into the case. The defendant claims that such an attempt by the prosecutor to "elicit testimony as to [the] defendant's drug use in the presence of the jury" implicates her constitutional right to a fair trial before an impartial jury.

The state argues, and the defendant concedes, that the defendant's claim of prosecutorial misconduct was unpreserved. The defendant seeks review under the

plain error doctrine. See Practice Book § 60-5.[3] Plain error review " 'is reserved for those truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *State* v. *Austin*, 244 Conn. 226, 241, 710 A.2d 732 (1998).

It is axiomatic that questions are not evidence. We are also aware that answers that are stricken are to be disregarded by the jury and are also not considered as evidence. Nevertheless, we note that the record is clear that the jury did have before it testimony concerning the defendant's drug use given in response to questions by the state as well as by the defendant. Those references to the defendant's drug use were not so inherently prejudicial, however, that they deprived the defendant of a fair trial.[4] The defendant further failed to show that, if evidence of drug use was improperly admitted, it more likely than not affected the verdict.

Additionally, we must reject the defendant's specific claim of prosecutorial misconduct as well. "It is well settled . . . that a defendant may not prevail under . . . the plain error doctrine unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial . . . ." *State* v. *Satchwell*, 244 Conn. 547, 564, 710 A.2d 1348 (1998). The defendant has failed to prove that, in the context of the trial as a whole, the state engaged in a pattern of repeated and blatantly egregious misconduct so pervasive that it denied her a fair trial

---

[3] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . "

[4] During oral argument, the defendant acknowledged that evidence concerning the defendant's use of drugs might have actually been beneficial to the defendant in that it allowed the jury to assign a reason for the defendant's actions, i.e., drug dependency.

and due process. See *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994). Accordingly, we reject the defendant's contention that she was denied a fair trial by the state's purported presentation of testimony concerning the defendant's prior drug use. The defendant's claim is unfounded.

## II

The defendant next claims that the constitutional guarantees against double jeopardy preclude separate sentences on the first and third counts of the information, specifically, promoting prostitution of a person less than sixteen years old and risk of injury to a child.[5] We disagree.

Each count charged that the defendant offered M, a child under the age of sixteen, for prostitution on various dates in 1992 and 1993. The defendant received a sentence of eighteen years, execution suspended after fourteen years, followed by five years of probation on the first count. On the third count, she received seven years, to be served concurrently with the sentence imposed on the first count.

The double jeopardy clause of the fifth amendment to the United States constitution prohibits multiple punishment for the same offense in a single trial, as well as multiple trials for the same offense. *State* v. *Otto*, 50 Conn. App. 1, 17–18, 717 A.2d 775, cert. denied, 247 Conn. 927, 719 A.2d 1171 (1998). The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. *State* v. *Lonergan*, 213 Conn. 74, 78, 566 A.2d 677 (1989), cert.

[5] This claim was not raised before the trial court. Nevertheless, double jeopardy claims arising in the context of a single trial that are raised for the first time on appeal are reviewable. *State* v. *Chicano*, 216 Conn. 699, 705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); see also *State* v. *Foster*, 45 Conn. App. 369, 384 n.17, 696 A.2d 1003, cert. denied, 243 Conn. 904, 701 A.2d 335 (1997).

denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Greco*, 216 Conn. 282, 290–91, 579 A.2d 84 (1990). In this case, the state concedes, and we agree, that the crimes charged arise out of the same act; the question is whether they are the same offense.

"[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires the proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932). We look to the language of the statutes, the information and the bill of particulars, but not the evidence presented at trial. *State* v. *Greco*, supra, 216 Conn. 291. This test is not a conclusive presumption of law but, rather, is a rule of statutory construction and should not be controlling where there is a clear indication of contrary legislative intent. *State* v. *Braswell*, 42 Conn. App. 264, 269, 679 A.2d 407 (1996), appeal dismissed, 243 Conn. 248, 701 A.2d 1057 (1997). "The determinative question is whether the legislature intended the offenses to be separate." Id. We recognize that a substantial overlap in the proof required does not necessarily make the two offenses the same legislatively.

Because the defendant has not shown a clear legislative intent to the contrary,[6] the *Blockburger* test is con-

---

[6] In fact, the origins and purposes of the two offenses are different. The clear purpose of the risk of injury statute is to "protect the well-being of children." *State* v. *Payne*, 40 Conn. App. 1, 7, 669 A.2d 582 (1995), aff'd, 240

trolling. See *State* v. *Nixon*, 231 Conn. 545, 563, 651 A.2d 1264 (1995). We conclude that the two crimes charged are not the same offense and that there was no double jeopardy violation when the defendant was sentenced for violations of both §§ 53a-86 and 53-21. Count three of the charging document, i.e, risk of injury to a child, imposes criminal liability for doing any act "likely to impair the health or morals of any . . . child [under the age of sixteen] . . . ." General Statutes (Rev. to 1991) § 53-21. Count one of the charging document, charging promoting prostitution, imposes criminal liability when one "knowingly . . . (2) advances or profits from prostitution of a person less than sixteen years old." General Statutes § 53a-86.

An act of promoting prostitution does not necessarily constitute a violation of the statute that prohibits risk of injury to a child, and vice versa. Promoting prostitution requires a specific intent; the actor must "knowingly advance[7] or profit from prostitution of a person less than sixteen years old." Risk of injury to a child, as charged, i.e., that the defendant "did commit certain acts likely to impair the morals" of M, requires no such mental element. Similarly, while risk of injury requires that the defendant commit an act "likely to impair the morals" of a child, promoting prostitution does not. Because each statute requires proof of a fact or facts that the other does not, they are not the same offense

Conn. 766, 695 A.2d 525 (1997). The primary purpose of the promotion of prostitution offense is to prevent acts or solicitations of prostitution, with victimization of children as one of the factors affecting the degree of penalty. See General Statutes § 53a-86. It is clear that the legislature intended and authorized cumulative punishments for violations of these two statutes.

[7] One advances prostitution when one "knowingly causes or aids a person to commit or engage in prostitution, procures or solicits patrons for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designated to institute, aid or facilitate an act or enterprise of prostitution." General Statutes § 53a-85 (1).

under *Blockburger* and, therefore, there is no double jeopardy violation.

The judgment is affirmed.

In this opinion the other judges concurred.