# STATE OF CONNECTICUT *v.* LEOTIS PAYNE
## (AC 20232)

Mihalakos, Zarella and Daly Js.

Argued September 29, 2000—officially released May 29, 2001

584

Conrad Ost Seifert, special public defender, for the appellant (defendant).

Timothy J. Sugrue, senior assistant state's attorney, with whom, on the brief, were Michael Dearington, state's attorney, and Michael A. Pepper, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Leotis Payne, appeals from the judgment of conviction, rendered after a jury trial, of felony murder in violation of General Statutes § 53a-54c,[1] robbery in the first degree in violation of General Statutes § 53a-134 (a) (2),[2] robbery in the second degree in violation of General Statutes § 53a-135 (a) (1),[3] larceny in the second degree in violation of General Statutes § 53a-123 (a) (3),[4] carrying a pistol without a permit in violation of General Statutes § 29-

---

[1] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery . . . and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[2] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[3] General Statutes § 53a-135 (a) provides in relevant part: "A person is guilty of robbery in the second degree when he commits robbery as defined in section 53a-133 and (1) he is aided by another person actually present . . . ."

[4] General Statutes § 53a-123 (a) provides in relevant part: "A person is guilty of larceny in the second degree when he commits larceny as defined in section 53a-119, and . . . (3) the property, regardless of its nature or value, is taken from the person of another . . . ."

35[5] and criminal possession of a firearm in violation of General Statutes (Rev. to 1993) § 53a-217 (a).[6] The defendant claims that the court improperly (1) failed to excuse a juror who allegedly had been asleep during portions of the trial and that such failure constituted a "structural error" in the trial, (2) refused to grant him a new trial as a result of certain allegedly improper remarks made by the assistant state's attorney during closing argument, (3) charged the jury in its instructions relative to the defendant's consciousness of guilt and (4) instructed the jury that reasonable doubt is not doubt that is suggested by the "ingenuity of counsel." We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On October 24, 1994, Jose Marrero, his future wife, Amy Cobain, Devon McFarlane and the victim, Louis Hood (victim's group), were on Frank Street in New Haven. Marrero, Hood and Cobain entered a store for the purpose of getting change for Marrero's $100 bill. At the same time, the defendant, Eaker McClendon and Alexander Lacks (defendant's group) were outside the store, talking with Steven Thomas. The defendant's group also entered the store when Marrero attempted to change his $100 bill.

While returning to Hood's residence, the victim's group was followed by the defendant's group. Thereafter, the defendant approached Cobain and placed a gun to her head. Marrero jumped between the defendant and Cobain, and urged the defendant in street parlance not to shoot. Cobain and McFarlane ran off down the

---

[5] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

[6] General Statutes (Rev. to 1993) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when he possesses a firearm . . . and has been convicted of . . . a class A felony . . . ."

street. The defendant then told Marrero to give up his valuables, proceeded to rifle through his pockets and removed his money. The defendant then backed up and began to squeeze the trigger of his handgun. Hood was fatally shot in his attempt to push Marrero away. Cobain and McFarlane heard the shot. McFarlane glanced back and saw the defendant with a gun in his hand.

Officer Edwin Rodriguez of the New Haven police department was the first police officer to arrive at the scene. He observed Hood motionless and unconscious on the ground with a bullet wound in his left arm. No handgun or spent shells were found at the scene. An autopsy revealed that Hood's left arm had been crossed in front of his chest when he was shot. The bullet struck his arm and moved through his chest cavity. Thereafter, the defendant was convicted and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly failed to excuse a juror who allegedly had been asleep during portions of the trial and that such failure constituted a structural error in the trial. We disagree. Although the defendant has presented these claims as two separate issues, we will address them as one.

On the second day of evidence, the court noted on the record that it had been brought to its attention, by the court monitor and the sheriff, that a juror might be having some difficulty staying awake. Neither party commented and the trial proceeded. On the next day of evidence, the court again noted for the record the juror's physical mannerisms. Defense counsel suggested that the court question the juror. After conducting the inquiry, the prosecutor opined that the juror had been sleeping. Defense counsel disagreed and argued in

defense of the juror's behavior.[7] The prosecutor again argued that the juror's behavior was inappropriate and that he should be excused. Again, defense counsel disagreed. Thereafter, the court made no finding as to whether the juror had been asleep and, at defense counsel's request, declined to dismiss the juror. Following that colloquy, there was no further mention of the juror's behavior throughout the remainder of the trial.

The defendant asserts that his claim, although not raised at trial, is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state, however, argues that the defendant's claim is not one that is unpreserved, but one that was waived at trial. The state claims, and we agree, that the defendant's claim should fail because *Golding* does not establish an avenue of appellate review for claims that were waived at trial under those circumstances.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Internal quotation marks omitted.)

---

[7] In response to the opinion of the assistant state's attorney that the juror had been sleeping, defense counsel stated: "My life's experience has taught me that sometimes I do [my] best listening with my eyes closed. [The juror]'s paid attention and looked up every time exhibits were passed. I have made eye contact with him, as well as with other members of the jury. He's come out and been frank with us."

*State* v. *Turner*, 62 Conn. App. 376, 392, 771 A.2d 206 (2001).

"In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 240. In *State* v. *Cooper*, 38 Conn. App. 661, 666–67, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996), we held that a defendant could not satisfy the third prong of *Golding* where he had implicitly waived at trial a challenge to the alleged constitutional deprivation that was the basis of his claim on appeal. Therefore, a defendant cannot prevail under *Golding* on a claim that he implicitly waived at trial. See id.

In the present case, it is clear that the defendant waived any claim concerning the allegedly sleeping juror. Defense counsel was apprised by the court that a juror may have been sleeping and, yet, counsel continuously argued that the juror had not been asleep and that his behavior was not inappropriate. "A defendant must avail himself of the opportunity to make an objection and if he 'does not avail himself of the opportunity, he must be holden to a waiver of the objection.' " (Internal quotation marks omitted.) *State* v. *Tate*, 59 Conn. App. 282, 285, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000). "To allow the defendant to seek reversal now that his trial strategy has failed would amount to allowing him to induce potentially harmful error, and then ambush the state with that claim on appeal." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 38 Conn. App. 670.

Therefore, because defense counsel was informed by the court of potential juror misconduct, was given the

opportunity to object, refused to make an objection, argued in defense of the juror's behavior and, furthermore, requested that the court not dismiss the juror, we conclude that defense counsel's conduct amounts to an implicit waiver of any objection he may have brought concerning the allegedly sleeping juror. Because the defendant waived his claim at trial, he cannot satisfy *Golding* and, accordingly, his claim must fail.

## II

### A

The defendant next claims that certain comments made by the assistant state's attorney during his closing argument were improper and violated the defendant's right to a fair trial. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim. During his initial argument to the jury, the assistant state's attorney stated that "[the defendant] probably got himself involved in another robbery a couple of days later." Defense counsel immediately objected. The court sustained the objection and stated, in front of the jury, that the statement was unsupported by the evidence and was not a logical or reasonable inference. Defense counsel did not request either a curative instruction or a mistrial. During his rebuttal argument to the jury, the assistant state's attorney stated that "[a]ll [the victim's] family has left is his picture. Now on a slab, on a cutting board. . . . Let them come away with a guilty verdict . . . ." The next day, before the court charged the jury, the defendant objected to the references to the victim's body and the comments concerning the victim's family as an inappropriate plea for sympathy. Defense counsel also requested a curative instruction, which the court incorporated into its final jury charge.[8]

---

[8] In response to the defendant's objection, the court gave the following curative instruction: "Nor should you be influenced by any sympathy for

"Prosecutorial misconduct may . . . occur in the course of closing argument. . . . Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Rivera*, 61 Conn. App. 763, 769, 765 A.2d 1240, cert. denied, 256 Conn. 901, 772 A.2d 599 (2001); see *State* v. *Heredia*, 253 Conn. 543, 561, 754 A.2d 114 (2000).

"[T]o determine whether claims of prosecutorial misconduct amounted to a denial of due process, we must decide whether the challenged remarks were improper, and, if so, whether they caused substantial prejudice to the defendant. . . . To make this determination, we must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Rivera*, supra, 61 Conn. App. 769–70; *State* v. *Forde*, 52 Conn. App. 159, 172, 726 A.2d 132, cert. denied, 248 Conn. 918, 734 A.2d 567 (1999). "When a verdict is challenged on the basis of the prosecutor's allegedly prejudicial remarks, the defendant bears the burden of proving the remarks prejudicial in light of the whole trial." (Internal quotation marks omitted.) *State* v. *Rivera*, supra, 770. With those princi-

---

the accused and his family, nor for the victim and his family, the Hood family, or any other person who might be affected by your decision."

ples in mind, we must now determine whether the defendant was denied a fair trial.

Our review of the record discloses that the court incorporated a curative instruction concerning the assistant state's attorney's improper plea for sympathy for the victim's family. See footnote 8. Although defense counsel promptly objected to the statement that the defendant had been involved in another robbery, counsel did not request a specific curative instruction concerning that statement. The court did state, in front of the jury, that the comment was unsupported by the evidence and that such a conclusion could not be logically or reasonably inferred from the evidence presented. Furthermore, the jury did receive instructions "not [to] speculate or consider any other charges against this defendant . . . that may have come to mind to you in the course of this trial" and "not [to] go outside the evidence introduced into court to find facts." Therefore, we conclude that the court's comments concerning the defendant's objection and the instructions given to the jury were adequate to remedy any possible harm the defendant may have suffered as a result of the assistant state's attorney's comments.

The record also discloses that the challenged statements were not invited by defense counsel's argument and were not central to critical issues of the proceeding. Furthermore, considering the strength of the state's case against the defendant, we cannot conclude that the defendant was denied due process as a result of the assistant state's attorney's comments.

The challenged statements made by the assistant state's attorney clearly were improper. The statements, however, were made only during closing arguments and were not repeated throughout the course of the trial. "The fact that all of the defendant's claims focus on allegedly prejudicial remarks made only during closing

argument demonstrates that such comments were not a pervasive quality of the entire proceeding." *State* v. *Rivera,* supra, 61 Conn. App. 774. See, e.g., *State* v. *Kenney,* 53 Conn. App. 305, 324–25, 730 A.2d 119, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999). We, therefore, cannot conclude that "in the context of the entire trial . . . the defendant met [his] burden of proving that the argument deprived [him] of a fair trial." *State* v. *Rivera,* supra, 774. Accordingly, we are convinced that the defendant was not denied a fair trial.

B

The defendant also claims that two further remarks made by the assistant state's attorney during closing argument denied him a fair trial. The assistant state's attorney stated that the defendant had an interest in distorting the truth because if "convicted he will probably get a substantial sentence in this case." Also during closing arguments, the assistant state's attorney vouched for the credibility of one of the state's witnesses as well as for his own integrity and credibility as a prosecutor.[9] The defendant did not object to those remarks, nor did he request that the court give the jury a curative instruction. The defendant now seeks review pursuant to *Golding*[10] and the plain error doctrine; Practice Book § 60-5;[11] and requests that this court invoke its supervisory power and order a new trial.

---

[9] At trial, Levon Sowell, a witness for the defense, testified that McFarlane had told him that "[McFarlane] was the witness of a murder that he don't even know what happened" and that "the prosecutor told [McFarlane what] to say—to get on the stand, and if [McFarlane] got on the stand his probation will be reinstated." The prosecutor responded, during his closing argument, as follows: "I guess [Sowell's] claim is that I am telling witnesses like [McFarlane] that you got to testify to something you didn't see. Well, if that's the claim, let me make this clear to you. I understand that that's wrong, and I also understand that I am not really, I don't really want to lose my job for doing something like that."

[10] See part I.

[11] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose

It is well established that "[w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000); see *State* v. *Atkinson*, 235 Conn. 748, 769, 670 A.2d 276 (1996); *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994). It is clear that the remarks occurred only during closing arguments and, therefore, did not amount to a pattern of misconduct throughout the trial. Accordingly, the remarks by the assistant state's attorney did not violate the defendant's right to a fair trial. Therefore, because there is no constitutional violation, the defendant's claim fails to satisfy the second prong of *Golding*.

We also conclude that the conduct of the assistant state's attorney does not constitute plain error. "It is well settled . . . that a defendant may not prevail under . . . the plain error doctrine unless the prosecutorial impropriety was so pervasive or egregious as to constitute an infringement of the defendant's right to a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Aldrich*, 53 Conn. App. 627, 632, 733 A.2d 237, cert. denied, 250 Conn. 909, 734 A.2d 989 (1999); see *State* v. *Satchwell*, 244 Conn. 547, 564, 710 A.2d 1348 (1998). As previously stated, the defendant has failed to prove that the assistant state's attorney's conduct, in the context of the entire trial, amounted to a pattern of misconduct so pervasive and egregious that it denied him a fair trial. Accordingly, we conclude that the conduct of the assistant state's attorney does not amount to plain error.

---

subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Furthermore, because we conclude that there was no pattern of prosecutorial misconduct throughout the trial, we decline to invoke our supervisory power and order a new trial. See *State* v. *Pouncey*, 241 Conn. 802, 816, 699 A.2d 901 (1997). The defendant, therefore, cannot prevail on his claim.

### III

The defendant next claims that the court improperly instructed the jury as to consciousness of guilt. The state argues that the defendant's claim is unpreserved and, furthermore, is unreviewable under *Golding* because it is not constitutional in nature.[12] We agree.

It is clear that the claim is unpreserved because the defendant did not file a request to charge or take an exception after the charge was delivered. Pursuant to Practice Book § 42-16,[13] "[t]o preserve a challenge to the jury charge, the defendant must make a written request to charge, or take exception to the jury instructions when they are given by the trial court." (Internal quotation marks omitted.) *State* v. *Faria*, 254 Conn. 613, 632, 758 A.2d 348 (2000). "This court is not bound to review claims of instructional error if the party raising the claim neither submitted a written request to charge, nor excepted to the charge given by the trial court. Practice Book [§ 42-16]. The purpose of [Practice Book § 42-16] is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quo-

[12] See part I.

[13] Practice Book § 42-16 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury."

tation marks omitted.) *State* v. *Faria*, supra, 632. We therefore conclude that the defendant's claim is unpreserved.

Having established that the defendant's claim is unpreserved, we must now determine if it warrants *Golding* review. The defendant's claim fails to satisfy the second prong of *Golding* because it is not constitutional in nature. "It has . . . been stated numerous times that consciousness of guilt issues are not constitutional and, therefore, are not subject to review under the . . . *Golding* standard." (Internal quotation marks omitted.) *State* v. *Gibson*, 56 Conn. App. 154, 160, 742 A.2d 397 (1999); see *State* v. *Robinson*, 227 Conn. 711, 732, 631 A.2d 288 (1993); *State* v. *Snead*, 41 Conn. App. 584, 591, 677 A.2d 446 (1996); *State* v. *Merritt*, 36 Conn. App. 76, 96, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995). Furthermore, we conclude that the court's charge does not amount to plain error. We therefore decline to review the defendant's unpreserved claim.

## IV

The defendant claims finally that the court's instruction to the jury that reasonable doubt is not doubt that is suggested by the "ingenuity of counsel" violated his right to a fair trial.[14.] The defendant failed to preserve his claim by requesting a charge on reasonable doubt or objecting to the reasonable doubt instruction given by the court and, therefore, seeks *Golding*[15] or plain error review. The defendant's claim, however, fails to satisfy the second prong of *Golding*. Claims concerning the court's instruction on reasonable doubt raised by

---

[11] The court's instruction on reasonable doubt, in relevant part, was as follows: "Reasonable doubt. The meaning of reasonable doubt can be arrived [at] by emphasizing the word reasonable. It is not a surmise, a guess, a mere conjecture, nor is it doubt suggested by ingenuity of counsel . . . not warranted by the evidence."

[15] See part I.

the "ingenuity of counsel" are not constitutional in nature and, therefore, are not subject to *Golding* or plain error review.[16] *State* v. *Hines*, 243 Conn. 796, 816–18, 709 A.2d 522 (1998); *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). Accordingly, we also decline to review the defendant's unpreserved claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] We note that in *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997), our Supreme Court suggested that the " 'ingenuity of counsel' language, taken alone, might be problematic, and . . . ought to be avoided in the future." *State* v. *Hines*, 243 Conn. 796, 817–18 n.15, 709 A.2d 522 (1998). We do not attempt to retract this recommendation, but note that the court in the present case charged the jury prior to the release of *Taylor* and, accordingly, could not have ignored our Supreme Court's subsequent admonition of this practice. See id.