STATE OF CONNECTICUT *v.* ULICES CORONA
(AC 21197)

Foti, Flynn and Daly, Js.

Argued January 16—officially released April 23, 2002

*Felix Esposito,* for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *James E. Thomas,* state's attorney, and, on the brief, *Sandra L. Tullius,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. The defendant, Ulices Corona, appeals from the judgment of conviction, rendered after a trial to a three judge court, of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1] On appeal, the defendant claims (1) that there was an improper bifurcation of the fact-finding function of the three judge court and (2) that there was insufficient evidence of his intent to cause serious physical injury to the victim to support a conviction for manslaughter in the first degree. We disagree and affirm the judgment of the trial court.

The court reasonably could have found the following facts. On the evening of August 20, 1998, the defendant was walking on Wethersfield Avenue in Hartford accompanied by three women, including his girlfriend. As they approached the intersection of Wethersfield Avenue and Barker Street, they encountered a group consisting of the victim, Warren Huertas, and two women standing in the doorway of a market on one corner of that intersection.

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

As the defendant's group passed the market, the defendant's girlfriend called out to Huertas by name. Huertas responded by telling her to shut up. When she continued to call out to him, Huertas ignored her. The defendant's group then appeared to become angry and began shouting. The defendant approached Huertas quickly, asking him who he thought that he was to be talking like that. When Huertas did not respond to the defendant's comments, the defendant lifted him up and threw him to the ground. The defendant's companions then began to kick and hit Huertas.

As one of Huertas' companions went to call the police, the second woman who had been standing with Huertas called out to the defendant's group, telling them to leave Huertas alone. At that point, a melee erupted among the women and, apparently, the victim was temporarily forgotten. As the women fought, Huertas rose unsteadily to his feet and walked into the roadway. Goaded on by his girlfriend, the defendant returned to Huertas, punched him in the face, forced him to the ground and put him in a choke hold. The defendant then proceeded to stand on Huertas, sit on his chest and repeatedly strike his head against the pavement.

The defendant and his companions fled the scene at the sound of approaching sirens. When emergency help arrived, Huertas was barely breathing, was bleeding from the mouth, nose and ears, and had suffered abrasions on his upper chest. Huertas was transported to a hospital, where he died of craniocerebral trauma five days later.

The defendant initially was charged only with the crime of murder in violation of General Statutes § 53a-54a.[2] He waived his right to a jury trial and elected to

[2] General Statutes § 53a-54a provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

be tried by a three judge court pursuant to General Statutes § 54-82 (b).[3] Shortly before the trial commenced, the state filed a substitute information charging the defendant with two additional crimes, conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a,[4] and conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1).[5] The defendant waived his right to a jury trial on those counts as well and elected to be tried by a single judge pursuant to § 54-82 (a).[6] As the presiding judge of the three judge court, Judge Hartmere chose to hear the two conspiracy charges. At the conclusion of the trial, the three judge court found the defendant not guilty of murder, but guilty of the lesser included offense of manslaughter in the first degree. Judge Hartmere found the defendant not guilty of the two conspiracy charges. The defendant was committed to the custody of the commissioner of correction for a period of eighteen years. This appeal followed.

[3] General Statutes § 54-82 (b) provides in relevant part: "If the accused is charged with a crime punishable by death or imprisonment for life and elects to be tried by the court, the court shall be composed of three judges . . . . Such judges, or a majority of them, shall have power to decide all questions of law and fact arising upon the trial and render judgment accordingly."

[4] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one them commits an overt act in pursuance of such conspiracy."

[5] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[6] General Statutes § 54-82 (a) provides: "In any criminal case, prosecution or proceeding, the accused party may, if he so elects when called upon to plead, be tried by the court instead of by the jury; and, in such case, the court shall have jurisdiction to hear and try such case and render judgment and sentence thereon."

I

The defendant first claims that there was an improper bifurcation of the court's fact-finding function because the three judge court rendered judgment only on the murder charge, and the presiding judge individually rendered judgment on the two conspiracy charges. The defendant seeks review of his claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or, in the alternative, under the plain error doctrine or pursuant to this court's supervisory authority over the administration of justice.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) Id., 239–40. We previously have held that a defendant cannot satisfy the third prong of *Golding* when he has waived at trial a challenge to the alleged constitutional deprivation that is the basis of his claim on appeal. *State* v. *Payne*, 63 Conn. App. 583, 588–89, 777 A.2d 731, cert. granted on other grounds, 257 Conn. 904, 777 A.2d 195 (2001); *State* v. *Cooper*, 38 Conn. App. 661, 667, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996).

The record in the present case indicates that the defendant waived any objection to the procedure by which the court deliberated on the charges. The defendant explicitly agreed to have the murder count heard by the three judge court and the two conspiracy counts heard individually by Judge Hartmere.[7] Because the

[7] The following colloquy took place:

"[Court Clerk]: How do you wish to be tried, by a court or jury?

"The Defendant: By a court.

"The Court: All right. That previous waiver of a jury trial before Judge Clifford and election to be tried by a three judge panel will remain in effect then, and your not guilty pleas are noted.

\* \* \*

"The Court: Just before you begin . . . on this substitute information, what were the charges in the original file?

"[Prosecutor]: Just murder, Your Honor.

"The Court: Just murder. All right. Then you've got conspiracy to commit murder and conspiracy to commit assault in the first degree, and you've got a three judge panel. Is there a waiver? There wasn't any waiver on the second two counts.

"[Prosecutor]: There was not, Your Honor.

"The Court: All right. Now, the other question is, of course, whether there should be a three judge panel or a trial to a single judge.

"[Defense Counsel]: Your Honor, the defendant would respectfully waive the right to trial by jury on the second and third counts, and respectfully submit the case to this panel, Your Honor, and waive any claim to any contrary finding or requirement, Your Honor, if Your Honor finds that appropriate.

"The Court: All right. Have you talked this over with [the defendant] . . . ?

"[Defense Counsel]: This particular issue, no, sir, I have not.

"The Court: Do you want to talk to him now? I'll allow you time if you need more time. You can talk to him right now. This comes as a surprise to everyone, the substitute information, this morning.

[Defense Counsel]: Yes, Your Honor. If I may respectfully at least apprise him of the nature of the court's concerns.

\* \* \*

[Recess is taken while the defendant and his attorney discuss how they want to proceed.]

"[Defense Counsel]: Yes. Thank you, Your Honor. I have had an opportunity to thoroughly explain the law and the issues involved in the question which is now before the court regarding his trial on the two new counts of the substituted information, and *it is the defendant's position, my client's position, that depending upon Your Honor's wishes, this matter may be tried to this panel or as Your Honor may designate, to one of the honorable judges of this panel on those two single or separate counts as it were, Your*

defendant waived his claim at trial, he cannot satisfy *Golding* and his claim must fail. See *State* v. *Payne,* supra, 63 Conn. App. 586–89.

We next consider whether the defendant can prevail on his claim that plain error exists. "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the

*Honor, as Your Honor may designate or determine for a finding on those two counts.* The theory or the rationale behind that, Your Honor, is not to delay these proceedings or bifurcate these proceedings, but rather to proceed as we have been scheduled for today with an allowance that Your Honor rule as you deem proper with respect to the decision on these two counts, Your Honor. Thank you.

"The Court: All right. Thank you . . . . I don't think there is any right under the statute to a three judge panel on the conspiracy counts, counts two and three.

"[Defense Counsel]: No, Your Honor.

"The Court: Since I've been designated [as] presiding, I would assume responsibility for those two counts if there is a waiver of the jury trial, and if I am understanding it correctly, that is what you and [the defendant,] more accurately, with your advice, wishes to do?

"[Defense Counsel]: Yes, Your Honor, he does wish to waive jury trial on those two counts, Your Honor.

\* \* \*

"The Court: You've understood everything that I have asked you?

"The Defendant: Yes, Your Honor.

"The Court: And after discussing this with [defense counsel], your attorney, and considering all of the various possibilities and alternatives that [defense counsel] discussed and which I've mentioned some of them here, *it is your desire to go forward today with the three judge panel on the first count, the murder count, and trial to the court, me, on the second two counts, is that right?*

"The Defendant: *Yes, Your Honor.*

"The Court: Okay. Okay. I'll find then that your waiver of [the] right to a jury trial is intelligently, voluntarily done without any coercion or influence of any kind on you and that you've had enough time to talk to your attorney and you've done this with the advice of counsel, so that I will find that there is a valid waiver of your right to a jury trial on counts two and three, and that, therefore, those counts will be determined by me and tried to me as presiding judge.

"The Defendant: Yes, Your Honor.

"The Court: All right. Thank you, Mr. Corona." (Emphasis added.)

judicial proceedings." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 502, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

The right to a jury trial is fundamental and is secured by the constitution of Connecticut, article first, § 19, as amended by article four of the amendments. *State* v. *Kelly*, 256 Conn. 23, 31, 770 A.2d 908 (2001). A court's failure to follow statutory guidelines designed to safeguard a fundamental right is ordinarily subject to plain error review. "If a statute imposes a duty, the failure to comply with that statute may constitute plain error. . . . Where the legislature has chosen specific means to effectuate a fundamental right, failure to follow the mandatory provisions of the statute is plain error . . . . The failure to follow a procedural rule prescribing court procedures can also constitute plain error. . . . When a rule effectuates a fundamental right, noncompliance with its mandatory requirements will require a plain error review." (Citations omitted; internal quotation marks omitted.) *State* v. *Hedman*, 62 Conn. App. 403, 408, 772 A.2d 603, cert. granted on other grounds, 256 Conn. 909, 772 A.2d 602 (2001).

Just as a valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review, a valid waiver also thwarts plain error review of a claim. "[The] Plain Error Rule may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the Plain Error Rule may be applied) and a waiver of that right (to which the Plain Error Rule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relin-

quishment or abandonment of a known right." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, 52 Conn. App. 802, 809–10, 729 A.2d 778 (1999).

As previously discussed, the record clearly indicates that the defendant waived any objection to having the two conspiracy counts tried by Judge Hartmere. Under the circumstances of the case before us, we cannot conclude that the existence of an error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.

Even if we were to accord the defendant's claim plain error review, however, the defendant still could not prevail. "A *plain error review* does not necessarily require the conclusion that a defendant will prevail in the claim that *plain error exists*." (Emphasis in original.) *State* v. *Hedman*, supra, 62 Conn. App. 408. A "defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 389, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); see Practice Book § 60-5.[8]

The issue before us concerns only the appropriate consequence of a defendant's valid waiver of his right to a jury trial pursuant to § 54-82. Specifically, the question on appeal is whether the court was obligated to act as a three judge court with respect to all of the charges against the defendant, when only one of those

[8] Practice Book § 60-5 provides in relevant part: "The [reviewing] court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . . The [reviewing] court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

charges carried a maximum penalty of death or life imprisonment. We conclude that it was not.

Our resolution of that issue requires us to interpret § 54-82.[9] "Our analysis is governed by well established principles of statutory construction. Statutory construction is a question of law and, therefore, our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 788, 772 A.2d 559 (2001); 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 50, p. 222.

We do not construe § 54-82 to require a three judge court to deliberate on any charge not punishable by death or imprisonment for life simply because the accused is charged with multiple offenses, one of which does carry such a penalty. The statute's clear and unambiguous mandate is satisfied as long as those crimes carrying a penalty of death or life imprisonment are tried before a three judge court. As would otherwise be appropriate where the accused waives his right to a jury trial, any charges punishable by lesser penalties may be tried by a single judge.

In the case before us, there was only one count carrying a penalty of death or life imprisonment, the murder charge. That charge was properly tried by the three judge court. The two conspiracy counts each carried a maximum penalty of twenty years imprisonment[10] and

---

[9] See footnotes 3 and 6.

[10] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (5) for a class B felony other than manslaughter in the first degree with a

properly were tried by a single judge pursuant to § 54-82 (a). Because the court complied with the relevant statute, the defendant cannot prevail on his plain error claim.[11]

For the foregoing reasons, we also hold that this case does not present an appropriate situation in which to exercise our supervisory authority. "[O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 439, 773 A.2d 287 (2001). This case does not present such a situation.[12]

## II

The defendant next claims that there was insufficient evidence of his intent to cause serious physical injury to the victim to support a conviction for manslaughter in the first degree. We disagree.

firearm . . . a term not less than one year nor more than twenty years . . . ."

[11] Even if we were to find error, however, the defendant still could not prevail because he has failed to demonstrate that the claimed error was so harmful that a failure to reverse the judgment would result in manifest injustice. Although the defendant was convicted of manslaughter in the first degree, he was acquitted on the murder charge as well as the two conspiracy charges.

[12] Although the defendant has speculated that the division of the court's fact-finding responsibilities with respect to the different charges deprived him of the possible benefit of a "compromise" verdict, consisting of an acquittal on the manslaughter charge in exchange for a conviction on one or both of the conspiracy charges, such an argument rests on an implicit assumption that the court was prepared to deviate from its legitimate fact-finding role and engage in impermissible conduct. Such speculation has no support in the record and, in the absence of evidence to the contrary, we quite appropriately assume that judicial officers discharge their duties in accordance with the dictates of the law. See *Rosenblit* v. *Danaher*, 206 Conn. 125, 134, 537 A.2d 145 (1988) (unless there is evidence to the contrary, it is presumed that judicial acts and duties have been duly performed). We cannot correct a "defect" that rests on a contrary assumption.

"Our standard of review is well settled. A defendant who asserts an insufficiency of the evidence claim bears an arduous burden. We first review the evidence in [the] light most favorable to sustaining the verdict and then must decide whether the [court] reasonably could have concluded as it did." *State* v. *Hopkins*, 62 Conn. App. 665, 669–70, 772 A.2d 657 (2001).

"Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Turner*, 252 Conn. 714, 748, 751 A.2d 372 (2000). "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. A person's intention may be inferred from his conduct; and every person is conclusively presumed to intend the natural and necessary consequences of his acts." 1 B. Holden & J. Daly, supra, § 66c, p. 475. When reviewing a sufficiency of the evidence claim involving a manslaughter charge, "a factfinder may infer an intent to cause serious physical injury from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident." *State* v. *Allen*, 28 Conn. App. 81, 89–90, 611 A.2d 886, cert. denied, 223 Conn. 920, 614 A.2d 826 (1992); 1 B. Holden & J. Daly, supra, § 66c, p. 477 & (Sup. 2001) § 66c, p. 525.

To convict the defendant of manslaughter in the first degree, the state was required to prove that he intended to cause serious physical injury to the victim and, with that intent, caused the victim's death. General Statutes § 53a-55 (a) (1). The testimony presented at trial indicated that the defendant was the initial aggressor and

that he approached the victim in a threatening manner with his hands clenched into fists. After knocking the victim to the ground, the defendant continued to kick and punch the victim. While the victim was attempting to leave the scene, obviously unsteady on his feet, the defendant renewed his attack. The victim at that point was not making any effort to struggle or resist the attack. The defendant, holding the victim's hair and using his body weight, repeatedly smashed the victim's head against the pavement. The victim died as a result of the injuries inflicted by the defendant.

We conclude that the evidence relating to the defendant's conduct was sufficient to sustain an inference that he had the requisite intent to cause serious physical injury to the victim.

The judgment is affirmed.

In this opinion the other judges concurred.