## STATE OF CONNECTICUT *v.* ELEAZER WILSON
## (AC 18401)

Foti, Hennessy and Sullivan, Js.

Argued January 12—officially released April 20, 1999

*William A. Snider*, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Vicki Melchiorre*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SULLIVAN, J. The defendant, Eleazer Wilson, appeals from a judgment of conviction, rendered after a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A),[1] assault in the third degree in violation of General Statutes § 53a-61 (a) (1),[2] threatening in violation of General Statutes § 53a-62 (a) (1)[3] and sexual assault in a spousal relationship in violation of General Statutes § 53a-70b (b).[4] On

---

[1] General Statutes § 53a-92 provides in relevant part: "(a) A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

[2] General Statutes § 53a-61 provides in relevant part: "(a) A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

[3] General Statutes § 53a-62 provides in relevant part: "(a) A person is guilty of threatening when: (1) By physical threat, he intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ."

[4] General Statutes § 53a-70b provides in relevant part: "(a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury. . . ."

appeal, the defendant claims that the trial court improperly (1) denied his motion for a directed verdict because the evidence presented at trial was insufficient to sustain the conviction under § 53a-70b (b) and (2) withheld evidence from the jury. We disagree and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim were married in Jamaica in 1989. Shortly after their marriage, the defendant and the victim moved to Springfield, Massachusetts, where the defendant's mother lived. In 1990, the defendant and the victim separated, and the victim moved to Hartford. The defendant and the victim had no further contact with each other until 1994, when the defendant moved to Hartford. He occasionally saw the victim but never cohabited or had a sexual relationship with her. When the defendant learned in March of 1995 that the victim and a male friend had moved to Manchester, he notified his parole officer in Massachusetts of an outstanding warrant for the victim in Massachusetts and her present whereabouts. Thereafter, the victim was arrested and transported to Massachusetts.

The victim was released from jail in Massachusetts three weeks later when the defendant posted her bond. The defendant then drove the victim to his apartment in Hartford, although she had asked to be driven to a girlfriend's apartment in that city. The defendant ordered her out of the car. When the victim refused, the defendant kicked, punched, grabbed and pulled her, screaming, out of the car, where she fell to the pavement. The defendant then grabbed her by the back of her neck and continued to punch her as he led her up the back stairs to his apartment. When they entered the defendant's apartment, he pushed a couch in front of the door to prevent the victim from leaving. The defendant detained the victim for approximately twenty hours during which time he grabbed, punched and

threatened her. The defendant ripped off the victim's pants and sexually assaulted her. After the assault, the victim continued to scream and cry throughout the night. One of the defendant's neighbors testified that he heard a woman scream several times during the night. Sometime after midnight, the defendant threatened to stab the victim with what appeared to be a kitchen knife if she continued to scream. He let the victim leave the following afternoon, giving her the keys to his car and $50 to buy food and cigarettes.

The victim drove directly to Mount Sinai Hospital in Hartford. Samuel Ibrahim, a hospital physician who treated her, testified that she had multiple abrasions and bruises on her face and neck, including a cut over her right eyebrow, bruising around her right eye and a laceration to her right earlobe. The victim contacted the police from the hospital and told them what had occurred. Police officers, who noticed scratches and bruises on the victim's face, arrested the defendant at his apartment.

The defendant claimed that the victim had consented to sexual intercourse. The jury convicted the defendant, and this appeal followed.

I

The defendant first claims that the evidence is insufficient to support a verdict that the defendant is guilty of assault in a spousal relationship in violation of § 53a-70b (b). We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the

inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Torres*, 242 Conn. 485, 489, 698 A.2d 898 (1997). On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. Id., 490." (Internal quotation marks omitted.) *State* v. *Kondracki*, 51 Conn. App. 338, 342, 721 A.2d 567 (1998).

"We are guided by the well established principle that '[t]he trier of fact may accept or reject the testimony of any witness.' *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996). It is the trier of fact's 'exclusive province to weigh the conflicting evidence and determine the credibility of the witnesses.' *State* v. *Hooks*, 30 Conn. App. 232, 239, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993). We give deference to the evidence and the reasonable inferences drawn therefrom that support the trial court's determination of guilt. *State* v. *Dukes*, 46 Conn. App. 684, 690, 700 A.2d 119 (1997)." *State* v. *Kondracki*, supra, 51 Conn. App. 342–43.

The victim testified that the defendant took her to his apartment and held her for twenty hours against her will. She further testified that he repeatedly hit and sexually assaulted her. A witness testified that he heard a woman's screams coming from the defendant's apartment on the night in question. Two police officers testified as to injuries on the victim's face. The physician who treated her at the hospital also testified as to the extent of her injuries. Finally, the victim's torn clothes were shown to the jury. Because a reasonable view of

the evidence supports the jury's verdict, we conclude that the trial court properly denied the defendant's motion for a directed verdict.

## II

The defendant also claims that the trial court improperly withheld evidence from the jury. Specifically, the defendant argues that the jury should have been allowed to consider certain evidence in its deliberations even though all parties, including the defendant, agreed that it should not be given to the jury. We disagree.

The following additional facts are necessary to our resolution of this issue. At the trial, the victim's jeans were introduced into evidence as a full exhibit. The victim testified that a button snapped off her jeans during the sexual assault. The defendant testified that the button had not been on the victim's jeans when he picked her up. During a recess between final arguments and the jury charge, the court clerk found a button among the exhibits. The button appeared to be the type of button that was on the jeans. The following colloquy took place between the trial court and defense counsel:

"[Defense Counsel]: Your Honor, also may the record reflect that your clerk indicated in chambers also that that button had been there for the last couple of days each time.

"The Court: On the table?

"[Defense Counsel]: That's correct. And, just for the record, it was—the first time I saw it was after the closing of evidence and after argument.

"The Court: The first time I ever saw it and the state ever saw it before.

"[Defense Counsel]: I understand, in speaking to [the assistant state's attorney], they checked the transcript

and there was no indication that the witness ever testi-fied it went flying off or anything.

"[State's Attorney]: That's correct. I asked the reporter to check and there was no such testimony.

"The Court: All right, well, we did discuss in chambers, in that event, *there has to be a defense call* and assuming there is no prejudice—no prejudice to the defendant, just leaving things as they are, sending the jeans in the condition that they were shown to the jury, which is basically they both argued from but we have to preserve the button, obviously, and I would suggest if we could just make it, I thought, 1-D or I'll make it a court exhibit.

"[State's Attorney]: I would ask to make it a court exhibit.

"The Court: So, we could make it a court's exhibit.

"[Defense Counsel]: *We would have no objection to that, Your Honor, and, respectfully, I've had the opportunity to speak with Mr. Wilson about this matter. He wishes to go forward. He doesn't feel it's prejudicial one way or the other and he would not move for any motion for mistrial at all.*

"The Court: *Is that correct, Mr. Wilson?*

"[The Defendant]: *Yes, Your Honor.*

"The Court: *This was just discovered and just brought to my attention. I cannot think of how, given what you've stated about what's in or what is not in the record, how it would prejudice the defendant and, on the other hand, if the button is disclosed to the jury, then, I suppose, with reference to the argument of the defense that they never found the button, that would cut against the defendant.*

"[Defense Counsel]: *There is no question about it.*

"The Court: All right, well, then, that's what we'll do." (Emphasis added.)

The state's attorney, defense counsel and the defendant agreed that the jury should not be shown this button. In his final argument, defense counsel made reference to the fact that the button from the jeans was never found. The defendant did not preserve that claim of error but now argues that it is reviewable under the plain error doctrine.[5] Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). The fact that the jury did not have the button before it did not affect the fairness and integrity of the verdict.

"[The] Plain Error Rule may only be invoked in instances of forfeited-but-reversible error, *United States* v. *Olano*, 507 U.S. 725, 731–33, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993), and cannot be used for

---

[5] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law.

"The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same. . . ."

the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. See [id., 732–33]. As we have observed before, [t]he error contemplated by *Olano* is deviation from a legal rule, *unless* the rule has been waived. . . .

"The distinction between a forfeiture of a right (to which the Plain Error Rule may be applied) and a waiver of that right (to which the Plain Error Rule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. [Id., 733.]" (Citations omitted; emphasis added; internal quotation marks omitted.) *United States* v. *Lakich*, 23 F.3d 1203, 1207 (7th Cir. 1994).

The defendant next claims that this issue is reviewable under *Evans-Golding*.[6] We do not agree because it does not meet the second condition of *Golding*. The defendant's claim that he had a constitutional right to have the jury consider the button in its deliberations is not correct, with or without the waiving of the right. If such a right existed, the defendant clearly and expressly waived it.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] "[W]e hold that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973).