## STATE OF CONNECTICUT *v.* RYSHON WELLS
### (AC 28534)

McLachlan, Harper and McDonald, Js.

Argued April 24—officially released November 4, 2008

*H. Owen Chace*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Charles M. Stango*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Ryshon Wells, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217, carrying a pistol without a permit in violation of General Statutes § 29-35 and interfering with an officer in violation of General Statutes § 53a-167a.[1] The defendant claims that the court improperly failed, sua sponte, to declare a mistrial when (1) drugs that had not been introduced as evidence were found intermixed with properly introduced evidence in

---

[1] The defendant was given a total effective sentence of ten years imprisonment, execution suspended after six years, and five years probation.

the jury room, (2) the jury heard testimony that the gun had been fired prior to his arrest and (3) the jury heard testimony that a gun recovered upon his arrest was stolen property. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 26, 2006, the Bridgeport police were notified that a shooting had occurred in Bridgeport. Upon commencing an investigation, the police identified the defendant as a suspect. Once the defendant was located, he was notified by the police to stop and put his hands up. The defendant instead reached into his waistband, removed a gun, dropped that gun onto the sidewalk and immediately fled the scene. Soon thereafter, the police apprehended the defendant and recovered the gun.

In a substitute information filed on September 25, 2006, the state charged the defendant with criminal possession of a firearm, carrying a pistol without a permit and interfering with an officer. At the defendant's criminal trial, Vincent LaRiccia, a Bridgeport police officer who was at the scene of the defendant's arrest, testified regarding the number of bullets found within the recovered gun. LaRiccia testified that the gun has "a ten round capacity . . . . It would be a total of eleven" bullets.[2] He testified that on the evening of the arrest, the recovered gun had "eight [bullets] in the magazine and one in the chamber." The defendant did not object to this testimony.

Later during the defendant's trial, John Tenn, a Bridgeport police officer who arrived at the scene after the defendant's arrest, testified that after the defendant had been taken into police custody, he ran the "serial

---

[2] LaRiccia explained that a ten round capacity weapon holds ten bullets in the magazine, or clip, and one bullet in the chamber and, thus, holds a total of eleven bullets.

number" on the gun and got "a printout that . . . told [him] that the gun was stolen." The defendant objected to this testimony. After an off the record discussion with counsel, the court instructed the jury to "strike the testimony about the . . . gun being stolen . . . . You're not to consider that as evidence in this case whatsoever." The defendant did not object in any way to this instruction.

During its deliberation, the jury provided a note to the court that "one of us has just discovered what appears to be [marijuana] in the glove in the evidence box. Does this cause a problem?" The court then informed both parties that it would "instruct the jury— first I'm going to have it taken out of the evidence area and tell them not to consider it; it's not evidence in the case. But I have to welcome comments . . . ." The defendant stated that he "would agree" to such an instruction. The court then specifically instructed the jury not to consider the marijuana, as "it's not part of the information, you're not to speculate or try to guess why it's there. It's just not evidence in the case, and that's how I'm going to instruct you on that." The court then solicited comments from counsel on the jury instruction as given, and the defendant proffered no objection. The jury later returned a guilty verdict on all charges. This appeal followed.

The defendant claims that the court denied him a fair trial and due process under the fifth, sixth and fourteenth amendments to the United States constitution because it failed to declare a mistrial, sua sponte. In support of this claim, he argues that several improprieties occurred at trial, the cumulative effect of which denied him his constitutional rights. We will address each aspect of the defendant's claim in turn.

Before we do so, we note the applicable standard of review. "The decision as to whether to grant a motion

for a mistrial, or to grant a mistrial on the court's own motion, is one that requires the trial court to exercise its judicial discretion. . . . [T]he law has invested [c]ourts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion . . . there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion . . . . [A] mistrial should be granted only if something occurs in the course of the trial that makes it apparent to the court that a party cannot have a fair trial and the whole proceedings are vitiated." (Citations omitted; internal quotation marks omitted.) *State* v. *Phidd*, 42 Conn. App. 17, 38–39, 681 A.2d 310, cert. denied, 238 Conn. 907, 679 A.2d 2 (1996), cert. denied, 520 U.S. 1108, 117 S. Ct. 1115, 137 L. Ed. 2d 315 (1997).

I

The defendant's primary claim is that the presence of marijuana in the jury room along with properly introduced evidence violated his constitutional right to a fair trial. The defendant acknowledges that this claim was not preserved at trial and requests that we review it pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, in the alternative, under the plain error doctrine. See Practice Book § 60-5. Because we conclude that the defendant waived this claim at trial, we do not review the claim under *Golding* or the plain error doctrine.

"[W]aiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *State* v. *Wilson*, 52 Conn. App. 802, 810, 729 A.2d 778 (1999). "[A] valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review [and it] also thwarts plain error review of a

claim." *State* v. *Corona*, 69 Conn. App. 267, 274, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

Our careful review of the record leads us to conclude that the defendant waived any claim that this occurrence deprived him of a fair trial when he expressly agreed with the court's proposed jury instruction and failed to proffer any type of objection after that instruction was given to the jury. See, e.g., *State* v. *Respass*, 256 Conn. 164, 192–93, 770 A.2d 471 (waiver occurred when court "explicitly gave both parties opportunities to conduct further inquiry, and both parties declined. . . . [I]f the defendant perceived the trial court's inquiry as inadequate, then he would have complained during the inquiry process instead of waiting until after the jury had reached a verdict." [Citation omitted.]), cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

In terms of *Golding*, we note that although the defendant asserts that this claim deprived him of a fair trial, we cannot so conclude. One of the required conditions under *Golding* is that " the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on *whichever condition* is most relevant in the particular circumstances." (Emphasis added.) *State* v. *Golding*, supra, 213 Conn. 240. As the reviewing court, "we will review [the claim] and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and whether it clearly deprived the defendant of a fair trial." Id., 241. We conclude that because the defendant has waived the claim, there is no clear, existing constitutional violation, and, thus, the claim fails to satisfy the third prong of *Golding*. Additionally, on the basis of the defendant's waiver, we are not persuaded that plain error exists with regard to this claim.

## II

The defendant next claims that LaRiccia's testimony that the gun had been fired prior to the defendant's arrest violated his constitutional right to a fair hearing. The defendant concedes that this claim is unpreserved and seeks review under *Golding* and the plain error doctrine. We decline to review this claim under *Golding* and conclude that the defendant cannot succeed under the plain error doctrine.

We begin by noting that although the defendant asserts that this claim is of constitutional magnitude, we cannot so conclude. One of the required conditions under *Golding* is that "the claim is of constitutional magnitude alleging the violation of a fundamental right . . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on *whichever condition* is most relevant in the particular circumstances." (Emphasis added.) Id., 239–40. The defendant bears "the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right." Id., 240. "The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right." *State* v. *Stepney*, 94 Conn. App. 72, 79, 891 A.2d 67, cert. denied, 278 Conn. 911, 899 A.2d 40 (2006). "Generally, the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Internal quotation marks omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988).

It is well settled that claims involving disputed testimonial statements are evidentiary in nature. See, e.g., *State* v. *Hansen*, 39 Conn. App. 384, 388–91, 666 A.2d

421 (court declined to afford *Golding* or plain error review to testimony regarding defendant's past contacts with police), cert. denied, 235 Conn. 928, 667 A.2d 554 (1995). Accordingly, we conclude that the defendant's argument fails under the second prong of *Golding*.

The defendant also argues that plain error exists. A "defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 389, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000); see also Practice Book § 60-5. "[Plain error] review is reserved for *truly extraordinary situations* where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Emphasis added.) *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). "A *plain error review* does not necessarily require the conclusion that a defendant will prevail in the claim that *plain error exists*." (Emphasis in original.) *State* v. *Hedman*, 62 Conn. App. 403, 408, 772 A.2d 603 (2001), rev'd on other grounds, 261 Conn. 390, 802 A.2d 842 (2002).

The defendant has not demonstrated how the existence of an error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. Here, we cannot conclude that the defendant's claim is of such compelling error or so truly extraordinary that reversal of the court's judgment is required.

## III

We next turn to the defendant's claim that Tenn's testimony that the recovered gun was stolen violated his constitutional right to a fair hearing. The defendant

requests that we review this claim pursuant to *Golding* or the plain error doctrine. The defendant cannot prevail under either doctrine.

The defendant's claim is evidentiary in nature and not one of constitutional magnitude because he challenges the admissibility of testimonial evidence. As we concluded in part II, *Golding* review is inapplicable on this claim because a constitutional issue is not involved.

With regard to the plain error doctrine, "[it] may only be invoked in instances of forfeited-but-reversible error . . . and cannot be used for the purpose of revoking an otherwise valid waiver. This is so because if there has been a valid waiver, there is no error for us to correct. . . . The distinction between a forfeiture of a right (to which the Plain Error Rule may be applied) and a waiver of that right (to which the Plain Error Rule cannot be applied) is that [w]hereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (Citations omitted; internal quotation marks omitted.) *State* v. *Wilson*, supra, 52 Conn. App. 809–10.

Although the record reflects that the defendant did not intentionally waive this claim during trial, the claim fails under the plain error doctrine because he has not demonstrated the existence of a "truly extraordinary situation." The record clearly depicts Tenn's testimony that his research led him to conclude that the gun was stolen and also depicts the defendant's objection thereto. The court then instructed the jury to "strike the testimony about the . . . gun being stolen . . . . You're not to consider that as evidence in this case whatsoever." The defendant did not object or expressly agree to the instruction. Nonetheless, under plain error review, as we noted in part II, "review is reserved for *truly extraordinary situations* where the existence of

the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Emphasis added.) *State* v. *Hinckley*, supra, 198 Conn. 87–88. The defendant has not demonstrated how the existence of an error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. We cannot conclude that the defendant's claim is of such compelling error or so truly extraordinary to reverse the court's judgment.

On the basis of the foregoing analysis, we conclude that, whether viewed individually or collectively, the occurrences claimed by the defendant did not deprive him of a fair trial or due process. Accordingly, we disagree with the defendant's claim that the court's failure to declare a mistrial, sua sponte, constituted an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.