STATE OF CONNECTICUT *v.* CALVIN N.[1]
(AC 29020)

Harper, Robinson and West, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 20, 2009—officially released June 29, 2010

*William B. Westcott*, special public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Gail P. Hardy*, state's attorney, and, on the brief, *Anthony J. Spinella*, assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Calvin N., appeals from the judgment of conviction, rendered following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), risk of injury to a child in violation of General Statutes § 53-21 (a) (1), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).[2] The defendant claims that the trial court improperly (1) restricted his cross-examination of the

---

[2] The court imposed a total effective sentence of twelve years imprisonment.

complainant and (2) failed to inquire as to the existence of a conflict of interest involving his trial counsel. We reverse the judgment of the trial court and remand the case to that court for a new trial.

At trial, the state presented evidence that in the summer of 2004, the defendant resided with the complainant, the complainant's mother and four of the complainant's younger siblings. At that time, the female complainant was fourteen years old. According to the complainant, on four separate occasions during the summer of 2004, the defendant approached her from behind, while she was washing dishes at a kitchen sink, and touched her breasts. Also, the complainant testified that, on August 24, 2004, the defendant approached her while she was in her mother's bedroom, held her down on a bed and penetrated her vagina with one of his fingers. The defendant testified, denying that he had touched the complainant's breasts or had inserted his finger into her vagina, as alleged. The defendant's attorney argued that the complainant had fabricated the allegations against the defendant in an attempt to get him out of her residence. The defendant's attorney suggested that the fabrication occurred, in part, because the defendant restricted the complainant's activities in her home, such as her telephone and computer privileges. Additional information will be set forth as necessary.

The defendant's first claim is that the court improperly restricted his cross-examination of the complainant, thus violating his right to confront his accuser. We agree.

The following additional facts and procedural history are relevant to the defendant's claim. Prior to the evidentiary phase of the trial, the state filed a motion in limine "to preclude any evidence of untruthfulness

[concerning the complainant] with respect to her allegations of sexual assault by the defendant." In the motion, the state explained that it expected the defense to attempt to impeach the complainant by introducing a handwritten letter that, on its face, was authored by the complainant and, in which, the complainant admitted to her mother that she had fabricated her allegations of sexual abuse by the defendant. The state argued that such cross-examination of the complainant by the defendant would be unduly prejudicial because it would entitle the state to rebut the cross-examination by demonstrating that the complainant's mother authored the letter and that she was arrested and charged with several crimes in connection with the letter. Additionally, the state represented that, in connection with its right to rebut the letter, it intended to call as witnesses the police officer who investigated the charges against the complainant's mother as well as the defendant's trial attorney, whose role was limited to delivering the letter to the office of the state's attorney.

During trial, the court heard argument concerning the state's motion. The prosecutor represented that, in the letter, the complainant allegedly stated that she had fabricated the allegations of sexual abuse because she was upset that the defendant had taken away certain of her household privileges. The prosecutor argued that the only way the state could rebut the defendant's cross-examination of the complainant concerning the letter was to present testimony that the complainant's mother had fabricated the letter. The prosecutor argued: "Now, we know that [the complainant] didn't write that letter, her mother did. . . . The only way I can rehabilitate [the complainant] is through putting testimony in that this is what happened, the mother made this up . . . the state police officer who did the investigation said, yes, the mother wrote this letter. She's responsible for

these claims. And then it directly involves [the defendant's trial counsel], and that's what I'm trying to avoid." The prosecutor reiterated that the role of the defendant's trial counsel in connection with the letter was limited to delivering the letter to the office of the state's attorney, at the state's request. The prosecutor emphasized that he wanted to avoid a mistrial related to calling the defendant's trial counsel as a witness.

After hearing the representations of the prosecutor, the court stated that it did not believe a mistrial would be warranted "based on the limited amount that [the court knew] about the letter for which the handwriting exemplar was sought." The court then stated: "I don't think that it's at all appropriate to have any questioning about truthfulness of the accuser based on that letter." The court made clear, however, that the defendant had the right to attempt to impeach the complainant's credibility by means other than the letter. The court ruled: "I think the limitation should be [that] if there's any other allegations of untruthfulness or [that the complainant is] not being credible, unrelated to that letter, certainly those come in. And with regard to the allegation in the letter, if there's a source that you have that is other than the information in that letter, then I think you can cross-examine on that. But I think anything in that letter is suspect; well, it's beyond suspect." The defendant's attorney replied, "[r]ight."

Before the court issued its ruling, the defendant's attorney stated that the defense had means other than the letter by which to impeach the complainant's credibility and that he was perplexed by the state's attempt to preclude *all* means of impeaching the complainant's credibility. He stated that such an approach was patently unfair. After the court issued its ruling, the following colloquy occurred:

"[Defense Counsel]: Although for what it's worth, Your Honor, [the complainant's mother] hasn't been

convicted of anything yet. It's accusations in her case, as well.

"The Court: Right. I do understand.

"[Defense Counsel]: But I do have other, I don't have to rely on that letter as to—

"The Court: Okay. I think, you know, absolutely you have the right to cross-examine for impeachment and credibility, but not as to the letter and not as to the allegations in the letter unless you have an alternative source.

"[Defense Counsel]: Right.

"[The Prosecutor]: That's what I was trying to avoid.

"The Court: Okay. All right. That's my ruling. Somehow, I will craft that in writing and give it to you both at some point." The court issued a written order consistent with its ruling, and neither the court nor either party revisited the issue during the remainder of the trial.

First, we address whether the claim raised on appeal is reviewable. The defendant posits that the claim was "fully preserved for review" by virtue of the hearing related to the state's motion in limine and the court's ruling on the motion. In the alternative, the defendant requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

The state urges this court to conclude that, at trial, the defendant's attorney waived any objection to the court's ruling limiting cross-examination of the complainant. In this vein, the state observes that the defendant did not object to the court's ruling, either orally or in writing, and asserts that trial counsel, through his statements to the court, had assented to the court's ruling. "[W]aiver is the intentional relinquishment or abandonment of a known right. . . . [A] valid waiver

calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review [and it] also thwarts plain error review of a claim." (Citation omitted; internal quotation marks omitted.) *State* v. *Wells*, 111 Conn. App. 84, 88–89, 957 A.2d 557, cert. denied, 289 Conn. 958, 961 A.2d 423 (2008). Having reviewed the relevant transcripts from the trial, we do not agree that the defendant either explicitly or implicitly waived any objection to the court's ruling. Although the record does not reflect that the defendant's attorney objected to the court's ruling, his statements at the hearing on the state's motion did not convey the defendant's acquiescence in or agreement with the court's ruling.

The defendant did not waive this claim, but the record does not reflect that he properly preserved the claim for our review, as he did not raise the present claim before the trial court. Thus, we must determine whether the defendant's unpreserved claim is reviewable under *Golding*.[3] The first prong of *Golding* is satisfied, as the record is adequate for review. With regard to the second prong of *Golding*, the state asserts that the claim is evidentiary, rather than constitutional in nature. The

---

[3] "[I]f a defendant fails to preserve a claim for appellate review, we will not review the claim unless the defendant is entitled to review under the plain error doctrine or the rule set forth in *State* v. *Golding*, [supra, 213 Conn. 239–40]. . . . A party is obligated . . . affirmatively to request review under these doctrines. . . . Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error only if the following conditions are satisfied: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Citations omitted; internal quotation marks omitted.) *State* v. *Cutler*, 293 Conn. 303, 324–25, 977 A.2d 209 (2009).

defendant, however, argues that he was deprived of his right to confrontation under the federal constitution. "One of the required conditions under *Golding* is that the claim is of constitutional magnitude alleging the violation of a fundamental right. . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on *whichever condition* is most relevant in the particular circumstances. . . . [*State* v. *Golding*, supra, 213 Conn. 239–40]. The defendant bears the responsibility of demonstrating that his claim is indeed a violation of a fundamental constitutional right. . . . The defendant can not raise a constitutional claim by attaching a constitutional label to a purely evidentiary claim or by asserting merely that a strained connection exists between the evidentiary claim and a fundamental constitutional right. . . . Generally, the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Wells*, supra, 111 Conn. App. 90.

Here, the defendant asserts that the court violated his sixth amendment right to confrontation when, relying solely upon the state's representations concerning the authorship of the letter, it denied him all meaningful cross-examination into a legitimate area of inquiry. Here, the court did not rely expressly on any rule of evidence in precluding the letter, and, as the defendant argues, the prior inconsistent statements in the handwritten letter would have afforded him a significant ground on which to challenge the complainant's credibility on cross-examination. Thus, although the claim centers around the court's preclusion of evidence, it is not merely evidentiary in nature but fundamentally implicates the defendant's sixth amendment right to

confront his accuser and, therefore, satisfies *Golding*'s second prong.

Turning to *Golding*'s third prong, we must determine whether a constitutional violation clearly exists and clearly deprived the defendant of a fair trial. "The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal prosecution to confront the witnesses against him . . . . The primary interest secured by confrontation is the right to cross-examination. . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the jury with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . Further, the exclusion of defense evidence may deprive the defendant of his constitutional right to present a defense. . . .

"However, [t]he [c]onfrontation [c]lause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. . . . Thus, [t]he confrontation clause does not . . . suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination. . . . The court determines whether the evidence sought on cross-examination is relevant by determining whether that evidence renders the existence of [other facts] either certain or more probable. . . . [Furthermore, the] trial court has wide discretion to determine the relevancy of evidence and the scope

of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . [Finally, the] proffering party bears the burden of establishing the relevance of the offered testimony. . . .

"Although [t]he general rule is that restrictions on the scope of cross-examination are within the sound discretion of the trial judge . . . this discretion comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment. . . . The constitutional standard is met when defense counsel is permitted to expose to the jury the facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . Indeed, if testimony of a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to reveal any infirmities that cast doubt on the reliability of that testimony. . . . The defendant's right to cross-examine a witness, however, is not absolute." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, 273 Conn. 330, 338–40, 869 A.2d 1224 (2005).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . . Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the trial court, [t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." (Citation omitted; internal

quotation marks omitted.) *State* v. *Santiago*, 224 Conn. 325, 331, 618 A.2d 32 (1992).

On its face, the handwritten letter at issue, dated November 28, 2005, was written by the complainant and addressed to her mother. The letter stated that the complainant had fabricated her allegations of sexual abuse by the defendant because she had been upset with the defendant for restricting her telephone and computer privileges. In ruling on the state's motion to preclude cross-examination related to the letter, the court made clear that the only information it knew about the letter was that a handwriting exemplar had been sought in relation to the letter. During the hearing, the prosecutor stated that it was obvious that the complainant's mother authored the letter and that, if the letter became a subject of cross-examination, he would expect to call a police investigator and the defendant's trial counsel. The defendant's attorney did not state that the factual issue concerning the authorship of the letter was not in dispute, but he noted that the state's case against the complainant's mother was based only on accusations made by the state. The court, however, apparently relying on the state's allegations and nothing more, deemed the letter to be "suspect" and precluded any cross-examination related to it. The court was not presented with any evidence related to the authorship of the letter, did not hold a hearing related to the authenticity of the letter and did not make any finding concerning the authorship of the letter.

In confronting his accuser, the defendant had the right to present relevant and admissible evidence. The relevance of the letter is clear; if it was authored by the complainant, its existence made it significantly less likely that the complainant's allegations were credible. With regard to the admissibility of the letter, the court merely stated that the letter was "suspect . . . ." On the record before us, we cannot conclude that a sound

basis in law existed for the court's preclusion of this evidence or any cross-examination related to the evidence. The court's preclusion of the letter reflected an abuse of discretion.

As we already have observed, the precluded inquiry was of a significant nature in that it had a great potential of casting doubt on the complainant's credibility. Although the defendant had the opportunity to, and did, cross-examine the complainant, the defendant did not have the opportunity to question the complainant about the letter. The court's ruling had the effect of depriving the defendant of a significant means of attacking the complainant's version of events. It was central to the defendant's theory of defense to demonstrate that the complainant had fabricated her allegations of abuse to retaliate against the defendant because he was overly controlling and she resented his presence in her home. The statements in the letter were directly related to these matters. Clearly, such area of inquiry was completely foreclosed and was not covered by any permitted areas of inquiry. For these reasons, we conclude that the restriction on the defendant's cross-examination of the complainant violated his right to confrontation and clearly deprived him of a fair trial.

With regard to *Golding*'s fourth prong, the state argues that the court's ruling was harmless beyond a reasonable doubt "because the defendant cross-examined the complainant about the subjects covered in the letter without restriction." In this regard, the state accurately observes that, at trial, the defendant cross-examined the complainant about her resentment toward him because he had restricted her telephone and computer privileges, as well as whether she had fabricated her allegations against him. Although these topics were covered during cross-examination by means of evidence unrelated to the letter, and the complainant denied that her allegations were fabricated,

the defendant was, because of the court's ruling, unable to inquire as to whether the complainant had authored a letter to her mother in which she admitted that the allegations had been fabricated. The precluded inquiry was highly relevant to assessing the complainant's credibility. We do not conclude that the areas of inquiry that were permitted were similar in nature or would have had the same effect on the jury as an inquiry related to the letter. The line of inquiry related to the letter was not, and, in keeping with the court's ruling, could not have been covered during cross-examination. The defendant was deprived of the right to present the prior inconsistent statement to the complainant and to ask her about it before the jury. Because the precluded inquiry was directly related to the complainant's motive and could not have been addressed by any related inquiry during cross-examination, we do not conclude that the constitutional violation was harmless beyond a reasonable doubt.

For all of the foregoing reasons, we conclude that the defendant has prevailed under *Golding*. The constitutional deprivation affected all of the crimes with which he stands convicted, and he is entitled to a new trial as to all of these crimes.[4]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] Also, the defendant claims, for the first time on appeal pursuant to *Golding*, that the state's arguments in support of its motion to preclude inquiry related to the letter alerted the court to an apparent conflict of interest involving his trial counsel, that the court improperly failed to investigate whether his trial counsel had a conflict of interest due to his roles as trial counsel and a possible witness at trial and that the court's failure to investigate the matter amounted to a structural error requiring reversal of his conviction. Given our resolution of the defendant's first claim, from which we order a new trial, we need not address this claim to resolve the appeal. In determining that we need not address this claim, we are persuaded that this issue is not likely to arise during a new trial.