STATE OF CONNECTICUT *v.* JESSE PAREDES
(AC 33529)

Lavine, Sheldon and Mihalakos, Js.

Argued September 25—officially released November 13, 2012

*Norman A. Pattis*, with whom, on the brief, was *Daniel M. Erwin*, for the appellant (defendant).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's

attorney, and *John H. Malone,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Jesse Paredes, appeals from the judgment of conviction, rendered after a jury verdict, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1) and (5), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that the trial court improperly (1) failed to order an adequate remedy in the face of inadmissible hearsay and (2) admitted into evidence a video recorded interview (video) of the victim. We affirm the judgment of the trial court.[1]

The jury reasonably could have found the following facts. In May, 2008, the thirteen year old female victim was living in the junior unit of a residential treatment center (center) that provided twenty-four hour supervision for children with a variety of issues. Members of the center staff were responsible for assisting the children with the activities of daily living and ensuring that each child complied with his or her treatment plan. At the time, the defendant was employed as a per diem child development assistant at the center. His responsibilities required him to ensure the children's safety and to supervise their daily activities.

On the afternoon of May 4, 2008, the defendant was one of three staff members on duty in the junior unit. While the other two staff members were engaged in activities with three other children, the defendant suggested to the victim that they take a walk. Instead of taking her for a walk, the defendant took the victim to

---

[1] The defendant received a total effective sentence of thirty-two years imprisonment, execution suspended after seventeen years, followed by twenty years of probation with special conditions, including lifetime registration as a sex offender.

the "sensory room."[2] The victim understood the purpose of going to the sensory room was to have sex. In the sensory room, the victim removed her pants and underwear, and the defendant unzipped his trousers. When the defendant inserted his penis into the victim's vagina, the victim experienced pain and asked the defendant to stop. The defendant stopped momentarily, but again entered the victim despite her complaints of pain. Subsequently, the defendant ejaculated onto the victim's back. The defendant instructed the victim not to tell anyone what they had done. The victim and the defendant then went to the lounge at the center.

When they entered the lounge, the defendant informed another staff member, Melissa Ann Levack, that he and the victim had taken a walk. Levack thought that the defendant's comment was unusual because he ordinarily told staff members that he was taking a walk with a child before, not after, the fact.[3] Later, the defendant and the victim went to the gymnasium where staff member Eric Roccapriore was playing basketball with other children. Roccapriore invited the victim to join the game, but she declined. Roccapriore observed the victim pace around the doorway looking confused. He previously had observed the victim with that affect when she was anxious and did not want to engage in activities.

A staff shift change occurred at approximately 3 p.m. Justin Paxton, the junior unit supervisor, observed that the victim's demeanor was abnormal. The victim was standoffish rather than acting as her usual friendly, boisterous self. Paxton approached the victim and asked if something was bothering her. The victim did

[2] The sensory room was a locked room at the center designed as a place where a child in crisis could be taken away from a stressful situation to calm down.

[3] Earlier in the day, the defendant had confided in Levack about the sexual frustration he was experiencing with his girlfriend.

not want to discuss "it . . . ." After conferring with another staff member, Paxton again approached the victim, this time with another child who encouraged the victim to talk to Paxton. The victim responded that she did not "want to get this person in trouble. . . . I don't want to get this person fired . . . ." The victim's statements caused Paxton concern. He inquired further, and the victim told him that she and a staff member had engaged in intercourse and that she was afraid of being pregnant. The victim also stated that she had vaginal bleeding.[4] Paxton consoled the victim and then reported the victim's allegation to his supervisor.

At 11 p.m. that day, the victim was taken to a hospital. Before she went to the hospital, her underwear was placed in a plastic bag; at the hospital, it was given to a police officer. The victim was referred to the Connecticut Children's Medical Center where Renee Richard, a registered nurse trained as a sexual assault nurse examiner, obtained the victim's medical history and biological samples, which also were given to the police. During her examination of the victim, Richard discovered a tear in the victim's hymen, which caused bleeding. James Parker, a physician, testified that clinical observations of the victim's injuries were consistent with the victim's report of sexual assault.

The police subsequently seized a beanbag chair from the sensory room because it contained what appeared to be potential evidence. The soiled portion of the beanbag chair and the victim's underwear were sent to the state forensic laboratory for testing. Testing results revealed human seminal fluid consistent with a DNA profile consistent with the defendant's on the victim's underwear and a mixed biological sample with DNA

---

[4] The victim testified before Paxton did, and testified that she told Paxton what the defendant did to her. The defendant had an opportunity to cross-examine the victim. The defendant did not object to Paxton's testimony about what the victim told him.

profiles consistent with the defendant's and the victim's on the beanbag chair. Additional facts will be set forth as necessary.

## I

The defendant's first claim is that the court failed to order a mistrial in response to a witness' report of inadmissible hearsay by the victim in violation of his right to due process.[5] We disagree.

The following facts are relevant to this claim. Paxton testified that on May 5, 2008, the victim went about her usual activities at the center and that he was observing her during breakfast. When asked to describe the victim's behavior at that time, Paxton testified that the victim "was really troubled. She, at one point, actually kind of stood up and started screaming, Jesse [the defendant] raped me last night, Jesse raped me last night." Defense counsel objected generally to the testimony and asked that it be stricken from the record.[6]

The court held a sidebar conference and then excused the jury. The court stated for the record: "We had a sidebar. [Defense counsel] indicated that the nature of his objection was that the response went beyond the question, that the response was outside the parameters of the question and elicited more information than what was called for. The question I had is, did you watch her behavior in the cafeteria, what was her behavior and what did you observe? The question didn't specifically call for hearsay. The state then claimed that it would seek to get it in under [the] state of mind exception to the hearsay rule. [Defense counsel] then added

---

[5] We have articulated the defendant's claim in a distilled form. The defendant stated the issue on appeal as "[w]hether the court erred in not ordering an adequate remedy upon a constancy of accusation witness's uttering of substantive, testimonial hearsay?"

[6] Defense counsel stated: "I'm going to object to that, Your Honor. I'd ask that that comment be stricken from the record."

that he was also objecting on the basis of hearsay. So, let me hear from you [prosecutor] further on this issue. The objection is that it's hearsay. Your response is that it falls within the . . . state of mind exception?" The prosecutor argued that Paxton's testimony regarding the victim's statement in the cafeteria was admissible pursuant to the state of mind exception to the rule against hearsay. The court disagreed that the victim's statement, "Jesse raped me," was admissible under the state of mind exception to the hearsay rule, noting that it was too prejudicial, and sustained the defendant's objection.

Thereafter, the following colloquy transpired between the court and defense counsel:

"The Court: . . . I will instruct the jury that they're to disregard the last—to disregard the question and do you want me to remind them of the statement or just to tell them that they are to disregard the last answer?

"[Defense Counsel]: Your Honor, I would ask the court to remind them of the answer and to indicate that is—you have ruled on that, that is stricken . . . and they're not to consider that.

"The Court: That I'm striking the portion of the response that—you want me to tell them that I'm striking the portion of the response that [the victim] said, 'Jesse raped me'?

"[Defense Counsel]: Yes, Your Honor.

"The Court: And you want me to use those words, specifically?

"[Defense Counsel]: Yes, Your Honor."

When the jury returned to the courtroom, the court stated, in part: "Ladies and gentlemen of the jury, I'm going to instruct you that the witness' response to the last question, the portion of the response that stated

that [the victim] yelled, 'Jesse raped me,' that portion of the response is stricken from the record. You're not to consider that."[7]

On appeal, the defendant claims that the court's failure to order a mistrial on the basis of Paxton's testimony that the victim stated, "Jesse raped me," violated his right to due process. The defendant properly acknowledges that he did not request a mistrial and therefore that the issue is not preserved for our review. He argues, however, that his claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the record is adequate for review, the claim is of constitutional magnitude, the constitutional violation clearly exists and deprived him of a fair trial, and the error is not harmless beyond a reasonable doubt. The state argues that the defendant's claim is not reviewable because he waived it.[8] We agree with the state that the defendant waived his constitutional claim.[9]

"[W]aiver is the intentional relinquishment or abandonment of a known right." (Internal quotation marks omitted.) *State* v. *Wilson*, 52 Conn. App. 802, 810, 729 A.2d 778 (1999); see also *State* v. *Kitchens*, 299 Conn. 447, 482–84, 10 A.3d 942 (2011) (waiver of right to challenge jury instruction). "[A] valid waiver calls into question the existence of a constitutional violation depriving the defendant of a fair trial for the purpose of *Golding* review [and it] also thwarts plain error review of a

[7] In its final instructions to the jury, the court charged in part that "testimony that [the court has] instructed [them to] disregard" was "not evidence, and you must not consider [it] as evidence in deciding the facts of this case . . . ."

[8] The state makes no claim that the defendant induced or invited error. See *State* v. *Fabricatore*, 281 Conn. 469, 482 n.18, 915 A.2d 872 (2007).

[9] In the alternative, the defendant claims that his conviction should be reversed pursuant to the plain error rule. See Practice Book § 60-5. Because we conclude that the defendant waived his claim as to the victim's statement, plain error does not apply.

claim." *State* v. *Corona,* 69 Conn. App. 267, 274, 794 A.2d 565, cert. denied, 260 Conn. 935, 802 A.2d 88 (2002).

Because the procedural posture of this case is similar to that in *State* v. *Wells,* 111 Conn. App. 84, 957 A.2d 557, cert. denied, 289 Conn. 958, 961 A.2d 423 (2008), that case controls our decision here. In *Wells,* during its deliberations, the jury found marijuana that had not been admitted into evidence intermingled with properly admitted evidence. Id., 87–88. After the jurors sent the court a note informing it that they found the marijuana in a glove in the evidence box, the court informed "both parties that it would instruct the jury . . . not to consider it; it's not evidence in the case. But I have to welcome comments . . . . The defendant stated that he would agree to such an instruction. The court then specifically instructed the jury not to consider the marijuana . . . . It's just not evidence in the case, and that's how I'm going to instruct you on that." (Internal quotation marks omitted.) Id., 87.

On appeal, the defendant in *Wells* claimed that the jury's exposure to the marijuana violated his constitutional right to a fair trial, and that the court erred in failing, sua sponte, to declare a mistrial. Id. The defendant acknowledged that he had not preserved the claim at trial and sought review pursuant to *Golding,* or, in the alternative, reversal pursuant to the plain error rule embodied in Practice Book § 60-5. This court concluded that the defendant had waived his constitutional claim "when he expressly agreed with the court's proposed jury instruction and failed to proffer any type of objection after that instruction was given to the jury." Id., 89.

"One of the required conditions under *Golding* is that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial . . . . The appellate tribunal is free . . . to respond to the defendant's claim by focusing on *whichever condition* is most

relevant in the particular circumstances. . . . As the reviewing court, we will review [the claim] and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and whether it clearly deprived the defendant of a fair trial. . . . We conclude that because the defendant waived the claim, there is no clear, existing constitutional violation, and, thus, the claim fails to satisfy the third prong of *Golding*. Additionally, on the basis of the defendant's waiver, we are not persuaded that plain error exists with regard to this claim." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id.

In this case, the court informed the defendant of the curative instruction it intended to give, and defense counsel requested that the instruction include a recitation of Paxton's objectionable testimony. The court gave the instruction as requested by defense counsel. "Absent evidence to the contrary, a jury is presumed to have followed the court's instructions." *State* v. *Banks*, 117 Conn. App. 102, 119, 978 A.2d 519, cert. denied, 294 Conn. 905, 982 A.2d 1081 (2009). Because the defendant waived his claim at trial, we will not review it on appeal, nor will we reverse his conviction on the basis of his claim pursuant to the plain error rule.[10]

II

The defendant's second claim is that the court violated his right to confrontation by admitting the video of the victim regarding the sexual assault. Again, the defendant failed to preserve his claim at trial.[11] In order to bring his claim within the ambit of *Golding*, the

[10] The defendant has provided no authority for his claim that the court had a duty, sua sponte, to order a mistrial under the facts present here.

[11] Although the defendant filed a motion in limine with respect to the video, the state redacted that portion of the video to which the defendant objected. When the redacted video was shown to the jury, the defendant did not object on any ground.

defendant claims that the victim's statements in the video are testimonial hearsay and that their admission into evidence violated his constitutional right to confrontation and *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We decline to review this claim, as it is not of constitutional magnitude.[12]

The following facts pertain to the defendant's claim. At trial, the state placed into evidence a redacted video of an interview that Suzanne Jolissaint, a forensic interviewer at Aetna Foundation Children's Center at Saint Francis Hospital and Medical Center, had with the victim. Jolissaint testified that, in her position, she interviews children and teenagers when there is an allegation of abuse. She works with a team of medical providers, mental health professionals and social workers. Her role, for which she is specifically trained, is to talk to a child or teenager about what may have happened and to provide that information to a medical provider, as well as a therapist, so that the child or teenager receives proper treatment. Jolissaint's interview of the victim was part of a diagnostic procedure in the chain of treatment that was reviewed by physicians for the purpose of recommending treatment for the victim.

On appeal, the defendant claims that his constitutional right to confrontation was violated because the video contained testimonial hearsay of the victim.[13] The

---

[12] See *State* v. *Cromety*, 102 Conn. App. 425, 431, 925 A.2d 1133 ("[p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender" [internal quotation marks omitted]), cert. denied, 284 Conn. 912, 931 A.2d 932 (2007).

[13] The defendant also claims that the video was admitted pursuant to the business record exception, not the medical treatment exception, to the hearsay rule and therefore this case is distinguishable from *State* v. *Arroyo*, 284 Conn. 597, 625–35, 935 A.2d 975 (2007). We do not agree with the defendant's reading of the record. At trial, the defendant did not object to the redacted video on any basis. The state, therefore, had no obligation to identify any particular basis on which to offer the video into evidence. Although the prosecutor questioned Jolissaint to establish that the video had been made in the ordinary course of business, Jolissaint also testified

victim, however, testified at trial, and the defendant had an opportunity to cross-examine her. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford* v. *Washington*, supra, 541 U.S. 60 n.9; *State* v. *George J.*, 280 Conn. 551, 595–96, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); *State* v. *Pierre*, 277 Conn. 42, 78, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006). Moreover, when the primary purpose of the statements is to receive a medical diagnosis or treatment, not future criminal prosecution, the confrontation clause is not implicated. See *State* v. *Arroyo*, 284 Conn. 597, 625–35, 935 A.2d 975 (2007). The defendant has not demonstrated that his claim is of a constitutional nature, and he therefore is not entitled to review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.

that her interview with the victim was conducted for diagnostic and medical treatment purposes. The substance of the video, therefore, falls within the medical treatment exception to the hearsay rule. See Conn. Code Evid. § 8-3 (5).